# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| HADASSAH CORPORATION and INSUN KIM, | ) | |
| | ) | |
| | ) | |
| Defendants-Appellants, | ) | |
| | ) | |
| v. | ) | Case No. 1:08-cv-01477 |
| | ) | |
| JAY A. STEINBERG, AS CHAPTER 7 TRUSTEE | ) | The Honorable Joan H. Lefkow |
| | ) | |
| | ) | |
| Plaintiff-Appellee. | ) | |

Appeal taken from the United States Bankruptcy Court,
Northern District of Illinois, Eastern Division
Case No. 07 A 00879
Presiding Judge Honorable John H. Squires

## PLAINTIFF-APPELLEE'S RESPONSE APPELLATE BRIEF

Derek R. Wright (IL Bar No. 6276201)
Daniel M. Cordis (IL Bar No. 6285963)
Foley & Lardner LLP
321 North Clark Street
Suite 2800
Chicago, IL  60610
(312) 832-4500

CHIC_2864778.1

## TABLE OF CONTENTS

I.  Introduction ............................................................................................................. 1

II.  Statement Of The Case ............................................................................................ 3

III.  Background .............................................................................................................. 4

    A.  Lemon Scents Corporation Files For Chapter 11 Protection In September 2002 ................................................................................................................ 4

    B.  The Court Authorizes A Section 363 Sale Of The Lemon Scents Business To The Judgment Debtors .......................................................................... 4

    C.  The Operative Agreements And Note Underlying The Section 363 Sale ............. 6

    D.  The Judgment Debtors Refuse To Pay The IRS  And Otherwise Violate The Terms Of Their Agreements ........................................................................ 6

    E.  After Ample Notice And No Response To The Trustee's Complaint, The Bankruptcy Court Entered Default And Default Judgment Against The Judgment Debtors And Subsequently Denied Their Motion To Vacate ................ 7

IV.  Argument ................................................................................................................. 8

    A.  The Bankruptcy Court Acted Well Within Its  Discretion In Denying The Judgment Debtors' Motion To Vacate .................................................................. 8

    B.  The Bankruptcy Court Entered A Final  Order Of Default And Default Judgment On October 30, 2007 ......................................................................... 9

    C.  Judgment Debtors Fall Well Short Of Establishing "Excusable Neglect" Or Any Other Basis Under Rule 60(b) To Vacate The 10/30/07 Order ............... 12

    D.  The Bankruptcy Court's January 24, 2008 Oral Ruling Was More Than Sufficient .......................................................................................................... 14

V.  Conclusion ............................................................................................................. 14

CHIC_2864778.1

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Budinich v. Becton Dickinson & Co.*,
    486 U.S. 196 (1988) ......................................................................... 10-11

*Calumet Lumber, Inc. v. Mid-America Indus., Inc.*,
    103 F.3d 612 (7th Cir. 1997) ...........................................................9, 13

*Chase Manhattan Mortgage Corp. v. Moore*,
    446 F.3d 725 (7th Cir. 2006) ...............................................................11

*Dimmitt & Owens Fin., Inc. v. United States*,
    787 F.2d 1186 (7th Cir. 1986) ..................................................... 8-9, 13

*Hal Commodities Cycles Mgmt. Co. v. Kirsh*,
    825 F.2d 1136 (7th Cir. 1987) ...............................................................8

*In re State Exch. Fin. Co.*,
    896 F.2d 1104 (7th Cir. 1990) ...............................................................8

*Mares v. Busby*,
    34 F.3d 533 (7th Cir. 1994) ...................................................................8

*N. Cent. Ill. Laborer's Dist. Council v. S.J. Groves & Sons, Co.*,
    842 F.2d 164 (7th Cir. 1988) .................................................................8

*Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.*,
    869 F.2d 1058 (7th Cir. 1989) .............................................................13

*Ross Bros. Constr. Co. v. Int'l Steel Servs., Inc.*,
    283 F.3d 867 (7th Cir. 2002) ...............................................................11

*Shapo v. Engle*,
    463 F.3d 641 (7th Cir. 2006) ...............................................................11

*Soo Line R.R. Co. v. Escanaba & Lake Superior R.R. Co.*,
    840 F.2d 546 (7th Cir. 1988) ...............................................................11

*Zuelzke Tool & Eng'g Co. v. Anderson Die Castings, Inc.*,
    925 F.2d 226 (7th Cir. 1991) ...................................................... 8, 12-14

**RULES**

Rule 55 ...................................................................................................10, 11

CHIC_2864778.1

Rule 60(b) ...........................................................................................................................8, 13

CHIC_2864778.1

Jay A. Steinberg, not individually but solely in his capacity as chapter 7 trustee (the "Trustee") of the bankruptcy estate of Lemon Scents Corporation, by his attorneys, Foley & Lardner LLP, respectfully submits the following response brief and requests that this Court affirm the Bankruptcy Court's January 24, 2008 Order, (Dkt. 20),[1] denying Insun Kim's and Hadassah Corporation's (collectively, "Judgment Debtors") Motion to Vacate Order Of Default And Judgment Entered On October 30, 2007 ("Motion to Vacate"). (Dkt. 9)

## I.    <u>Introduction</u>

On January 24, 2008 – after witnessing the Judgment Debtors for a period of years violate the terms and conditions of a Section 363 sale order, refuse to make payments to the Internal Revenue Service ("IRS") and fail to respond in any fashion to the Trustee's Complaint For Turnover Of Property Under 11 U.S.C. § 542 And Other Relief ("Complaint") (Dkt. 1) – the Bankruptcy Court properly refused to vacate *both* its entry of default ("Entry of Default") and default judgment ("Default Judgment") embodied in its October 30, 2007 order (referred to collectively as the "10/30/07 Order").  (Dkt. 8)  The Bankruptcy Court acted properly and well within in its broad discretion in doing so for the reasons set forth below, and the Trustee respectfully requests that this Court affirm the Bankruptcy Court's sound decision.

The Trustee filed the Complaint on September 12, 2007.  Importantly, the Judgment Debtors do not dispute that they were properly served pursuant to Federal Rule of Bankruptcy 7004(b)(1) on that date, yet they failed to retain counsel or respond to the Complaint. Therefore, the Trustee filed with the Bankruptcy Court and served on the Judgment Debtors a Motion for Default Judgment on October 23, 2007, which was set for hearing on October 30, 2007.  (Dkt. 6)  The Judgment Debtors did not appear on October 30, 2007, and the Bankruptcy

---

[1] All references herein to "Dkt." are to the docket of the bankruptcy adversary proceeding

Court entered the 10/30/07 Order (incorporating both the Entry of Default and Default Judgment).  The Judgment Debtors mischaracterize the nature of the 10/30/07 Order in an attempt to claim a separate entry of default was never entered.  Yet, the plain terms of the 10/30/07 Order – indeed starting with its title – belie that contention.

The Judgment Debtors then filed a Motion To Vacate on November 2, 2007. (Dkt. 9)  In their Motion to Vacate, the Judgment Debtors failed to offer any plausible reason for their long-standing disrespect for the Bankruptcy Court's authority and failure to respond to the Complaint (only the latest episode of disrespect) which would justify vacating the 10/30/07 Order.  As such, the Bankruptcy Court acted within its discretion in denying the Motion to Vacate for failure to satisfy the requirements of Rules 55(c) and 60(b).

The Judgment Debtors' final argument on appeal is without merit as well.  The Bankruptcy Court's 10/30/07 Order is final.  The only matters left unresolved were mechanical calculations of interest and other unfulfilled obligations under various asset sale-related agreements and a promissory note, matters which do not strip an order of its practical finality. The Judgment Debtors mischaracterize the nature of the proceedings by claiming "damages" had yet to be determined, something which plainly was not the case per the terms of the 10/30/07 Order.  (Dkt. 8)

In sum, the Judgment Debtors set forth various arguments, all of which are fatally flawed in multiple respects.  As such, Judgment Debtors have failed to carry their heavy burden to justify this Court overturning the Bankruptcy Court's decision under the deferential abuse of discretion standard of review.  The Appellee-Trustee respectfully requests that this Court affirm the decision of the Bankruptcy Court accordingly.

---

(07 A 00879).

CHIC_2864778.1

## II.    Statement Of The Case[2]

In response to the Judgment Debtors' malfeasance and violations of a Section 363 sale order, the Trustee filed the Complaint on September 12, 2007.  (Dkt. 1)  The Judgment Debtors were ordered to answer the Complaint by October 12, 2007, a deadline which passed unmet, and the Bankruptcy Court set an initial status conference on the Complaint for October 23, 2007.  (Dkt. 1, 2)  The Judgment Debtors did not answer or respond to the Complaint, and did not appear at the status conference on October 23, 2007, at which time the Trustee presented the Motion for Default.  (Dkt. 6)  The Motion for Default was set for hearing on October 30, 2007.  (*Id*.)  On that date, the Judgment Debtors did not appear – either personally or through counsel – and the Bankruptcy Court entered the 10/30/07 Order and set a further status for November 27, 2007.  (Dkt. 7-8)

The Judgment Debtors filed the Motion to Vacate on November 2, 2007, and the Bankruptcy Court set a hearing date of November 13, 2007 on the Motion to Vacate.  (Dkt. 9, 10)  At the status conference on November 29, 2007, the Bankruptcy Court set a briefing schedule on the Motion to Vacate – with a response from the Trustee due by January 4, 2008, a reply from the Judgment Debtors being due by January 11, 2008 with a hearing scheduled for January 24, 2008.  (Dkt. 13-15)  The Trustee filed a timely response in opposition to the Motion to Vacate.  (Dkt. 16)  The Judgment Debtors did not file a reply, nor did the Judgment Debtors appear personally or through counsel at the January 24, 2008 hearing on their Motion to Vacate.

On January 24, 2008, the Bankruptcy Court denied the Motion to Vacate.  (Dkt. 20)  The Judgment Debtors filed a notice of appeal on January 31, 2008.  (R. 21)

---

[2] Following the requirements of Federal Rule of Bankruptcy 8010(a)(2), the Trustee sets forth a separate "Statement Of The Case" due to dissatisfaction with the Judgment Debtors' Statement Of The Case.

CHIC_2864778.1

III.    **Background**

 A. *Lemon Scents Corporation Files For Chapter 11 Protection In September 2002*

  The bankruptcy debtor, Lemon Scents Corporation, operated a commercial laundry and dry cleaning plant on West Augusta Boulevard in Chicago, Illinois. The debtor filed for protection under chapter 11 of the United States Bankruptcy Code (the "Code") on September 17, 2002. On October 28, 2002, the Bankruptcy Court converted the bankruptcy from one pending under chapter 11 to one pending under chapter 7 of the Code. Prior to the filing of its bankruptcy, the debtor owned, among other assets, real estate located at 1719-1727 West Augusta Boulevard, accounts receivable, inventory and various pieces of equipment. Beginning on October 29, 2002, this Court entered a series of orders authorizing the Trustee to operate the debtor's business as a going concern for short periods of time, commencing on October 30, 2002.

  The IRS was and is the debtor's largest creditor. The IRS held security interests in all of the debtor's assets pursuant to pre- and post-petition liens on those assets. Prior to its bankruptcy filing and while its chapter 11 case was pending, the debtor failed to file Section 941 tax returns or pay any of its required withholding taxes. After his appointment, the Appellee-Trustee required that the debtor use a payroll service going forward in the operation of the business to address these tax non-payment concerns.

 B. *The Court Authorizes A Section 363 Sale Of The Lemon Scents Business To The Judgment Debtors*

  The Trustee then initiated a Section 363 sale process in December 2003 to maximize the value of the business by selling it as a going concern, along with its assets, to the highest bidder. Ultimately, Insun Kim – the sister of the principal of the debtor – became a bidder for the business and its assets.

-4-

On April 12, 2004, the Trustee filed its Motion for Order (A) Authorizing the Sale of Assets Pursuant to 11 U.S.C. § 363(b) and (B) Shortening Notice.  The Trustee thereby sought authorization to sell assets of the debtor to the Judgment Debtors as the highest and best bidder, subject to any liens, claims and encumbrances on the debtor's assets, assuming the Trustee did not receive any higher or better offer in the interim.  On April 19, 2004, the Judgment Debtors – through their counsel – sent the Trustee a revised bid ("Term Sheet") for the purchase of the Debtor's assets.  The Term Sheet provided the buyer would:

A.    Pay $250,000 cash to the Trustee at closing;

B.    Assume all liability for items listed on "Exhibit A" of the Term Sheet in the approximate amount of $460,000;

C.    File in a timely manner all required tax returns for the business and remit the required deposits, if any, during the relevant period; and

D.    Tender a $600,000 secured non-interest bearing note payable to LePetomane X, Inc., solely as the escrowee and collection agent for the benefit of the IRS, as a priority claimant.  The Note was to be payable in sixty (60) monthly installments of $10,000.  The Term Sheet provided for a total purchase price of approximately $1.31 million.

On April 20, 2004, this Court entered its Sale Order authorizing the Trustee to sell the debtor's assets to the Judgment Debtors pursuant to Section 363 and the terms and conditions set forth in the Term Sheet.  Accordingly, on April 21, 2004, the Trustee transferred the debtor's assets to the Judgment Debtors.  This Court expressly reserved jurisdiction to enforce the terms and conditions of this Section 363 sale.

CHIC_2864778.1

C.     *The Operative Agreements And Note Underlying The Section 363 Sale*

Several agreements and documents were executed to effectuate the Section 363 sale of assets, namely: (a) the Note executed on May 1, 2004 by Hadassah Corporation, pursuant to which it agreed to pay to LePetomane X, Inc. – not individually but solely as collection agent for the IRS – the principal sum of $600,000; (b) a security agreement executed by Hadassah Corporation in favor of LePetomane X, Inc. – not individually but solely as collection agent for the IRS ("Hadassah Security Agreement"); (c) a pledge and security agreement ("Pledge & Security Agreement") executed by Insun Kim; and (d) a guaranty ("Personal Guaranty") executed by Insun Kim to ensure payment under the Note.

D.     *The Judgment Debtors Refuse To Pay The IRS*
       *And Otherwise Violate The Terms Of Their Agreements*

The Trustee closed the asset sale to the Judgment Debtors on or about July 7, 2004.  Following this asset sale, the Judgment Debtors ceased filing Section 941 tax returns for the laundry business and failed to pay the approximately $600,000 in withholding taxes due the IRS for the period from, without limitation, May 1, 2004 through the present.  These (non)actions of the Judgment Debtors violate the Term Sheet, the Bankruptcy Court's Sale Order and the related financing documents referenced above.  The Trustee held conferences and meetings in an attempt to obtain payment of the Note and the 941 taxes.  When there was no effort made to cure the default, the Trustee notified Judgment Debtors of their continuing violations of the Sale Order and related financing documents on December 22, 2005 and again on August 22, 2006.  Notwithstanding, at no time did either of the Judgment Debtors make any attempt to cure their respective defaults.  The Note provides that in the event of continuing default, "the entire unpaid amount of all the Note shall become immediately due and payable without demand, notice or legal process of any kind."  (<u>See</u> Note ¶ 6, Ex. B to Cmplt.).  The

CHIC_2864778.1

Judgment Debtors presently owe in excess of $260,000 to the IRS and remaining creditors, and, on information and belief, Hadassah Corporation has been dissolved.

E.    *After Ample Notice And No Response To The Trustee's Complaint, The Bankruptcy Court Entered Default And Default Judgment Against The Judgment Debtors And Subsequently Denied Their Motion To Vacate*

The Judgment Debtors' disregard for the Bankruptcy Court's authority, as described above, forced the Trustee, on September 12, 2007, to file the Complaint.  (Dkt. 1)  The Judgment Debtors were properly served two days later on September 14, 2007.  (Dkt. 4)  The Judgment Debtors did not respond in any fashion to the Complaint and, therefore, the Trustee filed the Motion for Default on October 23, 2007, which the Bankruptcy Court set for hearing on October 30, 2007.  (Dkt. 6)

By the October 30, 2007 hearing – forty-six (46) days after being served with the Complaint – Judgment Debtors had yet to retain counsel, file any appearance in the adversary action or otherwise respond to the Complaint.  The Bankruptcy Court entered an "Order Of Default And Judgment" (i.e., the 10/30/07 Order) granting the Trustee's Motion for Default and setting a hearing date to address mechanical computations of amounts owing, for example interest on the underlying promissory note.  (Dkt. 7-8)

On November 2, 2008, the Judgment Debtors filed their Motion to Vacate, setting forth various defenses to the Complaint and otherwise attempting to explain their failure to respond to the Complaint or the Motion for Default.  (Dkt. 9)  The Trustee filed a response to the Motion to Vacate on January 4, 2008.  (Dkt. 16)  Judgment Debtors did not file a reply in support of their Motion to Vacate.

At the January 24, 2008 hearing, the Judgment Debtors did not appear in Court either personally or by counsel (Hadassah Corporation could only appear by counsel).  The Bankruptcy Court indicated that it had read all papers submitted and was inclined to deny the

-7-

Motion to Vacate, implicitly finding the Judgment Debtors' defenses and excuses deficient as a matter of law to justify vacating the 10/30/07 Order.  (Dkt. 20)  This appeal ensued.

**IV.**  <u>**Argument**</u>

    A.    *The Bankruptcy Court Acted Well Within Its*
              *Discretion In Denying The Judgment Debtors' Motion To Vacate*

This Court's standard of review of the Bankruptcy Court's denial of the Motion to Vacate is abuse of discretion.  *See Zuelzke Tool & Eng'g Co. v. Anderson Die Castings, Inc.*, 925 F.2d 226, 228-29 (7th Cir. 1991) (stating that the lower court is "given wide latitude in deciding motions under Rule 60(b), and the denial of a Rule 60(b) motion to vacate a judgment is reviewed by [the reviewing] court under an abuse of discretion standard") (citation omitted). Stated differently, "[a] [lower] court will have abused its discretion only in situations in which no reasonable person could agree with the [lower] court."  *Mares v. Busby*, 34 F.3d 533, 535-36 (7th Cir. 1994).  Finally, case law from the Seventh Circuit is particularly unforgiving when it comes to overturning on appeal a lower court's denial of a motion to vacate a default judgment, making it clear that Judgment Debtors face an uphill battle.  *See, e.g.*,  *Zuelzke*, 925 F.2d at 229 ("Parties seeking to set aside default judgments face a formidable task as recent cases disclose.") (citing *In re State Exch. Fin. Co.*, 896 F.2d 1104 (7th Cir. 1990); *N. Cent. Ill. Laborer's Dist. Council v. S.J. Groves & Sons Co.*, 842 F.2d 164 (7th Cir. 1988); *Hal Commodities Cycles Mgmt. Co. v. Kirsh*, 825 F.2d 1136 (7th Cir. 1987); *Dimmitt & Owens Fin., Inc. v. United States*, 787 F.2d 1186, 1192 (7th Cir. 1986)).  Judge Posner stated in *Dimmitt* the following:

> In the more familiar battleground of appeals from refusals to set aside default judgments, this court has moved away from the traditional position . . . that such judgments are strongly disfavored; we are increasingly reluctant to reverse refusals to set them aside.  [citations omitted]  This tendency reflects the overworked condition of the federal courts, including this court and the district courts of this circuit, a condition that naturally makes us reluctant to insist on the resurrection of deceased

lawsuits. But the first and strongest line of defense against abusing the broad rights of access that modern claimants have to the federal district courts lies with those courts, so when a district judge decides to overlook a default and restore the case to his docket we are disinclined to interfere . . . Moreover, the universally accepted rule that an order denying a motion to set aside a default judgment will be reversed only if the district judge can be said to have abused his discretion . . . seems transferable intact to the case where the judge grants the motion. **In either case the judge is weighing imponderables – the burden on his docket (which is to say the inconvenience to other litigants) . . . With the standard of decision so multifaceted, the appellate court's ability to fault the district judge's application of the standard is quite limited, and the scope of effective judicial review is therefore slight.**

*Dimmitt & Owens Fin., Inc.*, 787 F.2d at 1193 (emphasis added).

In a similar vein, the actual scope of review of the denial of the Motion to Vacate is very narrow. Specifically, "'the [reviewing] court can only consider whether the denial of the motion was an abuse of discretion; we cannot reach the merits of the underlying judgment.'" *Calumet Lumber, Inc. v. Mid-America Indus., Inc.*, 103 F.3d 612, 615 (7th Cir. 1997) (alteration in original). In this case, the Judgment Debtors had been flouting the authority of the Bankruptcy Court for a number of years and were in the process of ignoring wholesale the Trustee's Complaint. The Bankruptcy Court was right to tire of the Judgment Debtors' recalcitrance and default them. As such, while the Bankruptcy Court's decision to deny the Motion to Vacate under the circumstances was correct and should be affirmed under any standard of review, in light of the deferential standard applicable here, this Court should affirm the decision below.

B.    *The Bankruptcy Court Entered A Final Order Of Default And Default Judgment On October 30, 2007*

The Judgment Debtors base their appeal to the Court on at least three fundamental misconceptions as to the Bankruptcy Court's 10/30/07 Order. First, the Judgment Debtors are

incorrect that *both* the Entry of Default and Default Judgment were not entered against them. Twisting the plain language and title of the 10/30/07 Order – "Order Of Default *And* Judgment" – the Judgment Debtors argue that the entry of default (*see* Rule 55(a)) was never entered, but rather just a default judgment (*see* Rule 55(b)). Again, even the simple title of the 10/30/07 Order undermines Judgment Debtors' untenable position. Moreover, Rule 55(b)(1) allows for entry of default judgment without further application to the Bankruptcy Court where the plaintiff's claim is for a sum certain. As explained below, the Trustee's claims against the Judgment Debtors were for sums certain, amounts which could be determined easily through simple calculations based on the various financial instruments at issue.

Second, the Judgment Debtors incorrectly argue that the 10/30/07 Order was not final and did not dispose of all claims against the Judgment Debtors. While it is true that the Trustee's Motion for Default was directed toward Count III of the Complaint, (Dkt. 6), the 10/30/07 Order was not limited to Count III and made clear the Trustee was entitled to judgment on the Complaint as a whole by stating, in part:

> The Motion is GRANTED and [Trustee] shall have judgment against [Judgment Debtors] on the Chapter 7 Trustee's Complaint for Turnover of Property Under 11 U.S.C. § 542 and Other Relief, in the amount of $260,000.00, which amount shall bear interest at the statutory rate of 9% *per annum* until paid in full.

Judgment Debtors do not – nor could they – point to anything in the 10/30/07 Order to suggest that it did not adjudicate all claims against all defendants. All that remains to be done in the Bankruptcy Court is the clerical and mechanical determination of such items as unpaid interest owing on a promissory note, further unpaid obligations under the terms of the financial agreements outlined in the Background section *supra* and so forth. Courts have held that such outstanding ministerial matters do not render a judgment non-final. *See*, *e.g.*, *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202-03 (1988) (declaring that "a decision on the

-10-

merits" is a "final decision" for purposes of  28 U.S.C. §1291 (non-bankruptcy equivalent of 28

U.S.C. § 158(a)) whether or not there remains for adjudication a request for attorneys' fees

attributable to the case); *Ross Bros. Constr. Co. v. Int'l Steel Servs., Inc.*, 283 F.3d 867, 871 (7th

Cir. 2002) (stating that outstanding issues as to attorneys' fees will not alter a final order or

negate its effect); *Shapo v. Engle*, 463 F.3d 641, 642-43 (7th Cir. 2006) (ruling that a provision

of an order directing appellant to pay $10,000 "with interest" did not render the order non-final,

even though the interest component had not been finally determined).

Just as important, all signs from the Bankruptcy Court, the Trustee and, in fact,

the Judgment Debtors, indicate the 10/30/07 Order is final and that nothing remains to do but

some mechanical monetary calculations.  In *Shapo*, Judge Posner stated:

> The test of finality is whether the district judge has finished the
> case.  *Chase Manhattan Mortgage Corp. v. Moore*, 446 F.3d 725
> (7th Cir. 2006) . . . All that matters, however, so far as finality and
> hence our jurisdiction is concerned, is that the district judge had
> thought herself finished with the case upon entering the orders.

*Id*.; *see also Soo Line R.R. Co. v. Escanaba & Lake Superior R.R. Co.*, 840 F.2d 546, 550 (7th

Cir. 1988) (indicating that appellate jurisdiction over a final order existed where the "case has

been terminated" and the lower court "itself believes that there is no more to do").  The

Bankruptcy Court has never indicated that substantive issues in connection with the Complaint

or 10/30/07 Order remain pending.  Importantly, nor have the Judgment Debtors appeared at any

hearings to claim issues in connection with the Complaint remain pending.  In short, the

10/30/07 Order was a final entry of default and default judgment, and the standards of Rule 60(b)

– as incorporated by Rule 55(c) – apply under the circumstances.  As such, the Rule 55(c) case

law cited by Judgment Debtors is inapposite and does not control here.

-11-

C.     *Judgment Debtors Fall Well Short Of Establishing "Excusable Neglect"
Or Any Other Basis Under Rule 60(b) To Vacate The 10/30/07 Order*

The Bankruptcy Court acted within its discretion and ruled correctly that the
Judgment Debtors had offered no basis sufficient under Rule 60(b) (applicable in the context of
default judgments, as opposed to only entries of default) to vacate the 10/30/07 Order.  Again,
the Bankruptcy Court's decision is subject to a highly deferential abuse of discretion standard
within the context of Seventh Circuit case law that does not favor the vacation of default
judgments under all circumstances.  *See Zuelzke Tool & Eng'g Co.*, 925 F.2d at 228-29; *Dimmitt
& Owens Fin., Inc.*, 787 F.2d at 1193.  The factors analyzed to determine whether "excusable
neglect" exists for purposes of Rule 60(b) ask whether a party has shown (i) good cause for its
default; (2) quick action to correct it; and (3) a meritorious defense.  *See Zuelzke Tool & Eng'g
Co.*, 925 F.2d at 229 (citation omitted).  Furthermore, "excusable neglect" requires a showing
that "actions leading to the default were not willful, careless, or negligent."  *Calumet Lumber,
Inc.*, 103 F.3d at 614-15 (citations omitted).  It could not be clearer under the circumstances that
the Judgment Debtors willfully, carelessly and negligently failed to respond in any fashion to the
Complaint.  The Judgment Debtors asked the Bankruptcy Court to believe they had been
scrambling around diligently in an attempt to retain counsel who was otherwise occupied with a
trial.  Of course, the Judgment Debtors had been on notice of the pending Complaint for forty-six
(46) days by that time, offering no plausible or acceptable excuse for their disregarding of the
Bankruptcy Court's authority.

In *Zuelke*, the Seventh Circuit refused to vacate the district court's denial of relief
from default judgment where a defendant had been in communication with another party which
had represented that it was the proper defendant, would substitute itself in the lawsuit and that
the ultimately defaulted party need not take any further action.  925 F.2d at 229-30.  The Seventh

CHIC_2864778.1

Circuit ruled that "where a party willfully, albeit through ignorance or carelessness, abdicates its responsibilities, relief from judgment under Rule 60(b) is not warranted." *Id.* The Judgment Debtors have a much less compelling (or not compelling at all) case for "excusable neglect" than, for example, the defaulted party in *Zuelke.* As already alluded to, here the Judgment Debtors had been properly served with process a full forty-six (46) days before the 10/30/07 Order was entered against them. (Dkt. 4) During that time, the Judgment Debtors took absolutely no steps to address or respond to the Complaint, and the Judgment Debtors had also been served with notice of the Trustee's Motion for Default. (Dkt. 6) It is inconceivable that this constitutes "excusable neglect" under any logical interpretation of that concept.[3]

In addition, the meritorious defense factor does not save Judgment Debtors either. Again, *Zuelzke* is instructive. After determining the appellant had not carried its burden to demonstrate good cause, the Court stated, "we need not pause long on the issue of a meritorious defense. Even if one exists, standing alone, it cannot excuse carelessness." 925 F.2d at 230 (citing *Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.*, 869 F.2d 1058, 1062 (7th Cir. 1989)). In any event, Judgment Debtors possess no meritorious defenses to the allegations in the Complaint, as the Bankruptcy Court implicitly found in denying the Motion to Vacate. The deficiencies in all of the Judgment Debtors' purported defenses to the allegations in the Complaint are set forth in detail in the Trustee's Response to the Motion to Vacate, filed on January 4, 2008. (Dkt. 16)

---

[3] The Judgment Debtors timely moved to vacate the 10/30/07 Order, filing it on November 2, 2007. But, in and of itself, this does not establish a proper basis to vacate a default judgment under Rule 60(b) where good cause has not been shown and a meritorious defense does not exist.

-13-

D.    *The Bankruptcy Court's January 24, 2008 Oral Ruling Was More Than Sufficient*

The Judgment Debtors' final red herring is that somehow Judge Squires did not properly articulate the basis of his ruling on January 24, 2008. Judgment Debtors fail to note for this Court that undoubtedly the discussion in the Bankruptcy Court on the Judgment Debtors' own motion was cut short by the fact that no one appeared that day on behalf of the movants. The official transcript provides:

> The Court:  You're here and we've got you. I've read all the papers. I haven't seen Mr. Strange or his colleagues on the motion to vacate the default.
>
> Do you have anything to add other than what you've so eloquently put in your moving papers?
>
> * * * *
>
> The Court:  So the courtroom deputy will enter the appropriate order on that motion. And I don't need to belabor the record any further.

Clearly, the Bankruptcy Court had reviewed the moving and response papers in connection with the Motion to Vacate and agreed with the arguments set forth in the Trustee's response papers. There was no opportunity for debate or oral argument because the Judgment Debtors were not present. The Bankruptcy Court made the basis of its ruling clear, although concise, and this Court should uphold that determination under the deferential abuse of discretion standard.

## V.    <u>Conclusion</u>

For these reasons, Jay A. Steinberg, not individually but solely in his capacity as chapter 7 trustee, respectfully requests that this Court affirm the decision of the Bankruptcy Court denying the Motion to Vacate and enter such other and further relief as this Court deems just and proper.

-14-

Dated:  May 8, 2008                    Respectfully submitted,

                                       JAY A. STEINBERG, NOT INDIVIDUALLY
                                       BUT SOLELY AS CHAPTER 7 TRUSTEE


                                       By:  /s/ Daniel M. Cordis
                                              One of his Attorneys


Derek Wright (IL Bar No. 6276201)
Foley & Lardner LLP
321 North Clark Street
Suite 2800
Chicago, Illinois  60610
312.832.4500 (t)
312.832.4700 (f)

CHIC_2864778.1

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel M. Cordis, an attorney, certify that on May 8, 2008, I caused to be served a true and accurate copy of **Plaintiff-Appellee's Response Appellate Brief** upon the following individuals via the e-filing system of the United States District Court for the Northern District of Illinois (Eastern Division):

Mr. Jeffrey Strange
Rod Radjenovich
Jeffrey Strange & Associates
717 Ridge Road
Wilmette, IL  60091
847.256.7377
jstrangelaw@aol.com
*ECF/first class mail

/s/ Daniel M. Cordis
Daniel M. Cordis

CHIC_2864778.1